# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE MARTIN, | : | Civil No. 3:16-cv-2060 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| SECRETARY OF CORRECTIONS, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Tyrone Martin, ("Martin"), an inmate who, at all relevant times, was housed at the State Correctional Institution at Smithfield, Pennsylvania ("SCI-Smithfield"), initiated the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are the Secretary of Corrections, Corrections Officers Myers, Kanagy, Dickson, Fazenbaker, Bickel, Barger, Gaff, and Morrison; Mailroom Supervisor Neumann, and Corrections Health Care Administrator ("CHCA") Dreibelbis, (collectively, "Corrections Defendants"). Also named as Defendants are X-Ray Technician Ross[1] and Correct Care Solutions, LLC ("CCS").

Presently pending before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56, by the Corrections Defendants. (Doc. 62). For the reasons set

---

[1] The Court previously terminated Melissa Ross as a party to this action. (See Docs. 95, 96).

forth below, the motion for summary judgment will be granted in part and denied in part.

I. **Motion for Summary Judgment Standard of Review**

When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so. *Id.*; *Garcia v. Newtown Twp.*, 2010 WL 785808, at *3 (E.D. Pa. 2010). However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Third Circuit Court of Appeals has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." *Latham v. United States*, 306 F. App'x 716, 718 (3d Cir. 2009) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996)). Accordingly, the Court will treat Defendants' filing as a motion for summary judgment.

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## II. Allegations of the Complaint

Martin alleges that he was attacked by several correctional officers at SCI-Smithfield on May 5, 2015. (Doc. 1). He asserts that his cell door was electronically opened at approximately 2:18 p.m., and he approached Defendants Myers and Dickson to request a law library pass. (*Id.* at p. 6). Defendant Myers allegedly advised Martin to obtain the pass from the Sergeant. (*Id.*). Martin states that he then approached the Sergeant and requested a law library pass, who advised Martin to request the pass from Defendant Myers. (*Id.*). Martin returned to Defendant Myers, who was speaking with two other inmates, and again requested a law library pass. (*Id.* at p. 7). Martin alleges that Defendant Myers began to yell at him, and Martin requested to speak to a Lieutenant. (*Id.*). Defendant Myers allegedly "became upset and enraged" when Martin asked for a Lieutenant. (*Id.*). Defendant Myers ordered Martin to go into a separate room, but Martin

4

refused this order. (*Id.*). Martin alleges that several corrections officers then surrounded him and a fight ensued. (*Id.* at p. 8). He alleges that Defendants Myers, Dickson, Kanagy, Fazenbaker, Bickel, Barger, and Morrison assaulted him and used excessive force on him during the assault. (*Id.* at pp. 3-5, 8). Martin alleges that the officers punched and kicked him, stabbed him in the face, and verbally assaulted him. (*Id.* at pp. 3-5, 8, 9). He alleges that Defendant Gaff failed to stop the assault, correctional officers carried him off of the block head first, and hit his head on the steel door frames. (*Id.* at p. 9). As a result of the alleged assault, Martin states that he sustained multiple injuries to his face, head, leg, arm and body, as well as psychological trauma. (*Id.* at p. 9).

Martin asserts that the correctional officers subsequently charged him with criminal assault as an attempt to shift blame. (*Id.*). He alleges that the Secretary of Corrections, Kauffman, Dreibelbis, Ross, and Correct Care Solutions "worked collectively" to "[]hide[] Plaintiff['s] injuries." (*Id.*).

Martin further alleges that his legal mail was repeatedly opened and "ma[y]be" copied in violation of prison policy. (*Id.* at p. 9).

## III. Discussion

The Corrections Defendants seek an entry of judgment in their favor based on the following: (1) Martin failed to exhaust his administrative remedies with respect to his excessive force and failure to intervene claims; (2) Martin has pled only conclusory

5

allegations of a conspiracy; and, (3) Martin cannot establish personal involvement on the part of the Secretary of Corrections, Kauffman, Dreibelbis, and Neumann. (Doc. 72, pp. 2-17). The Court will address these claims *seriatim*.

### A. <u>Exhaustion of Administrative Review</u>

The Corrections Defendants argue that Martin failed to exhaust his administrative remedies with respect to his excessive force and failure to intervene claims. (Doc. 72, pp. 10-13).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*,

204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); *Rivera v. Pa. Dep't of Corr.*, 388 F. App'x 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies *prior* to filing a civil action in federal court.") (emphasis added). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. "As for the failure to [] identify [the] named defendants on the grievance form, . . . to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (citing *Spruill*, 372 F.3d at 234).

The Pennsylvania Department of Corrections ("DOC") Inmate Grievance System

Policy consists of a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. DC-ADM 804, § 1(A)(9). "The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(12). Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. DC-ADM 804, § 2(A)(1). Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. DC-ADM 804, § 2(B). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

1. <u>Failure to Name Defendants in the Grievance</u>

The Corrections Defendants contend that Martin failed to exhaust his claims of excessive force against Defendants Myers, Dickson, Kanagy, Fazenbaker, Bickel, Barger, and Morrison by failing to name them in his initial grievance. (Doc. 72, pp. 10-13). It is undisputed that Martin's grievance did not identify any of these Defendants in his initial grievance. However, given the circumstances of this case, the Court concludes that this failure does not amount to a procedural default barring Martin's claims.

42 U.S.C. § 1997(e) does not impose a name-all-defendants requirement, and "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 217, 219 (2007). Rather, the inmate is required to comply the requirements of the prison's grievance system. *Id.* at 219. DC-ADM 804 provides that "[t]he inmate must include a statement of the facts relevant to the claim" in his grievance. DC-ADM 804(1)(A)(11).

In *Spruill*, the inmate-plaintiff did not name a party who he later tried to bring a civil rights action against. *Spruill*, 372 F.3d 218. The *Spruill* Court analyzed a prior version of DC-ADM 804, which provided, in pertinent part: "The inmate shall include a statement of the facts relevant to the claim. . . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance." *Id.* at 233. The *Spruill* Court "recognized that a grievance under the DOC's administrative review system should identify

9

specific persons, if practicable." *Chimenti v. Mohadjerin*, 2008 WL 2551603, at *4 (M.D. Pa. June 24, 2008). "It held that an unexplained failure to identify a responsible prison official in a grievance may constitute a procedural default of the claim." *Id.* Thus, "in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies[.]" *Williams v. Pennsylvania, Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005).

Martin suggests that it was not practicable for him to identify the Defendants because he was unconscious during the assault, and, thus, he did not know who was involved in the incident in question. (Doc. 73, p. 1). Martin has adequately explained his failure to name the Defendants in his grievance. Because it was not practicable for Martin to identify the Defendants, he has not procedurally defaulted his claims. *See Robinson v. Johnson*, 343 F. App'x 778 (3d Cir. 2009) (holding that inmate did not procedurally default on a claim challenging a policy where the defendants did not meet their burden of demonstrating that it was practicable for the inmate to identify them as the relevant policymakers); *Sanders v. Beard*, 2013 WL 1703582, at *7 (M.D. Pa. June 4, 2012) ("Even if the prison's grievance review process had not identified Defendants Felton and Varner, Plaintiffs' failure to name them would be excused because they have explained that it was not practicable for them to name or identify the individuals responsible for maintenance at the prison."); *Victor v. SCI Smithfield*, 2011 WL 3584781, at *6 (M.D. Pa. Aug.12, 2011) ("It

is only the 'unexplained failure to identify a responsible prison official in a grievance [that] constitutes a procedural default of the claim.'") (quoting *Freeman v. Dep't of Corr.*, 2011 U.S. Dist. LEXIS 17045, *12, 2011 WL 94422 (M.D. Pa. 2011)).

Moreover, the "'primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones*, 549 U.S. at 219). Martin's grievance alerted prison officials to the alleged use of excessive force, and he should not be deemed to have procedurally defaulted his claims by failing to identify the Defendants when he contends that the force was so excessive that he was unconscious. Furthermore, Defendants Myers, Dickson, Kanagy, Fazenbaker, Bickel, Barger, and Morrison each completed an incident report regarding the alleged staff assault on May 5, 2015. (Doc. 73-1, pp. 2-10). The incident reports name Myers, Dickson, Kanagy, Fazenbaker, Bickel, Barger, and Morrison as staff members involved in the incident. (*Id.*). Thus, the prison officials were on notice of the persons who were claimed to be doing wrong. *Spruill*, 372 F.3d at 234 (finding that "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance."). Consequently, the Corrections Defendants will be denied summary judgment as to the

excessive force claims against Defendants Myers, Dickson, Kanagy, Fazenbaker, Bickel, Barger, and Morrison based on failure to exhaust.

### 2. Failure to Mention a Claim in the Grievance

The Corrections Defendants further argue that because Martin did not mention a failure to intervene claim against Defendant Gaff in his grievance, he failed to exhaust the available administrative remedies as to this claim. (Doc. 72, pp. 12-13). Martin did not specifically mention a failure to intervene claim in his grievance. However, in the grievance, Martin complained about the use of force by prison staff. The failure to intervene by some Defendants to stop other Defendants from using excessive force can be seen as a part of the use of force that Martin complained about in his grievance. Therefore, while the grievance could have been more specific, it served the purpose of the exhaustion requirement of alerting prison officials to the problem and giving them the opportunity to correct it before being brought into Court. Thus, the Corrections Defendants will be denied summary judgment as to the failure to intervene claim against Defendant Gaff based on failure to exhaust.

### B. Conspiracy Claim

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993)

(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

In a conclusory fashion, Martin alleges that the Secretary of Corrections, Kauffman, Dreibelbis, Ross[2], and Correct Care Solutions "worked collectively" to "[]hide[] Plaintiff['s] injuries." (Doc. 1, p. 9). Martin has concluded that these Defendants conspired to hide his injuries, yet he has failed to allege any facts or produce any evidence showing an agreement or plan formulated and executed by these Defendants to achieve this conspiracy. (*See* Doc. 1). Martin cannot rely on unsupported claims of conspiracy. Without a factual showing which gives some substance to this conspiracy claim, Martin's

---

[2] As previously noted, Defendant Ross was terminated as a party to this action. (*See* Docs. 95, 96).

conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and unsupported speculation are properly dismissed under § 1915(d)).

Martin submitted three documents which he contends support his conspiracy claim. (Doc. 1, pp. 53-67). First, he references a Release from Responsibility for Medical Treatment showing that Martin refused to have his injuries x-rayed on May 7, 2017. (*Id.* at p. 53). Second, Martin submitted a portion of Grievance Number 566563, filed on May 12, 2015, wherein he requested full facial x-rays, and Inmate Requests to Staff Member relating to facial x-rays. (*Id.* at pp. 54-64). On June 17, 2015, Facility Manager Kauffman responded to the grievance and noted that Martin received a full skull x-ray and that Martin had not complained of or demonstrated any injuries to the right side of his face during his medical appointment. (*Id.* at p. 59). Facility Manager Kauffman noted that medical staff repeatedly explained to Martin that the full skull x-ray encompassed the right side, which revealed no fractures. (*Id.*). Third, Martin submitted the Initial Review Response to Grievance Number 573571, wherein he complained about the actions of an unnamed nurse who is not a party to this action. (*Id.* at pp. 66- 67). These documents fail to reasonably

14

suggest the presence of an agreement or concerted activity between the Secretary of Corrections, Kauffman, and Dreibelbis.

The Court finds that Martin failed to plead facts which would reveal the existence of an agreement designed to deny his constitutional rights. *See Hodge v. United States*, 2009 WL 2843332, *11 (M.D. Pa. 2009) (dismissing plaintiff's "broad" conspiracy claim because "he does not aver facts sufficient to establish an agreement between the individual defendants to deprive plaintiff of his rights or from which such an agreement could reasonably be inferred"). Consequently, the Corrections Defendants' motion will be granted on this ground.

### C. Lack of Personal Involvement regarding the Secretary of Corrections and Defendants Kauffman, Dreibelbis, and Neumann

The Corrections Defendants argue that Martin fails to state a claim against the Secretary of Corrections, Kauffman, Dreibelbis, and Neumann because they lack personal involvement in the alleged wrongs. (Doc. 72, pp. 15-17).

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge

15

and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Martin alleges generally that the Secretary of Corrections "failed to properly investigate and train its employees." (Doc. 1, p. 3). He alleges that Defendant Kauffman "is the Facility Manager at SCI Smithfield and is responsible for Plaintiff's care, custody, and control, which makes him responsible for Plaintiff's well being. He is also in charge of those actively involved in using excessive force, interception of privileged communications, etc." (*Id.*). Martin further alleges that the Secretary of Corrections and Kauffman "allow[] rogue officers the ability to violate inmate (Plaintiff[']s) constitutional rights." (*Id.* at p. 6). These claim are, in essence, an assertion of *respondeat superior* liability seeking to hold the Secretary of Corrections and Kauffman liable based exclusively on their supervisory roles. This ground of constitutional liability has been squarely rejected by the Courts. *See Rode*, 845 F.2d at 1207. Accordingly, Defendants Secretary of Corrections and Kauffman are entitled to summary judgment.

Regarding Defendant Neumann, Martin alleges that he is the mailroom supervisor and oversees all mail. (Doc. 1, p. 4). He asserts that Defendant Neumann tampered with his legal mail on February 8, 2016, March 7, 2016, August 22, 2016, and September 29, 2016. (*Id.*). Martin has sufficiently pled claims against Defendant Neumann under § 1983 based on his alleged opening of Martin's legal mail. Therefore, the motion for summary judgment will be denied as to the claims against Defendant Neumann based on lack of personal involvement in the alleged wrongs.

Furthermore, Martin appears to set forth claims against Defendants Kauffman, Dreibelbis, and Neumann based on their involvement in the grievance procedure and their responses to his grievance. (Doc. 1, pp. 32, 37, 45, 51, 59, 61, 66-67, 73, 82, 85, 88, 100). A state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. *See Rode*, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *see also Croom v. Wagner*, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dept. of Corrections*, 2006 WL

2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Martin's claims against Defendants Kauffman, Dreibelbis and Neumann based on their review of grievances and requests to staff are insufficient to demonstrate personal involvement. Consequently, Defendants Kauffman, Dreibelbis and Neumann are entitled to entry of judgment in their favor on this ground.

## IV. Conclusion

Based on the foregoing, the Corrections Defendants' motion (Doc. 62) for summary judgment will be granted in part and denied in part.

A separate Order shall issue.

Dated: March 5, 2018

Robert D. Mariani
United States District Judge