IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE MARTIN, | : | Civil No. 3:16-cv-2060 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| SECRETARY OF CORRECTIONS, *et al.*, | : | |
| Defendants | : | |

**FILED**
**SCRANTON**
JUN -1 2018
PER _____
DEPUTY CLERK

**MEMORANDUM**

Plaintiff Tyrone Martin, ("Martin"), an inmate who, at all relevant times, was housed at the State Correctional Institution at Smithfield, Pennsylvania ("SCI-Smithfield"), initiated the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Correct Care Solutions, LLC ("CCS"), and several employees of the Pennsylvania Department of Corrections ("DOC"). (*Id.*).

Defendant CCS previously moved to dismiss the complaint. (Doc. 18). By Memorandum and Order dated September 14, 2017, the Court granted CCS' motion to dismiss based on Martin's failure to plead a policy, practice or custom of CCS authorized by a final policymaker of CCS. (Docs. 98, 99). The Order also granted Martin the opportunity to amend his claims against Defendant CCS. (*Id.*). Martin then filed a motion for leave to amend the claims against CCS. (Doc. 101). The Court granted Martin's motion for leave to amend and directed Defendant CCS to file a response. (Doc. 109). Presently pending

before the Court is Defendant CCS' second motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 111). For the reasons set forth below, the Court will grant the motion to dismiss.

I.  **Standard of Review**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II. Allegations of the Complaint[1]

Martin alleges that he was attacked by several correctional officers at SCI-Smithfield on May 5, 2015. (Doc. 1). Martin alleges that the officers punched and kicked him, and verbally assaulted him. (Doc. 1, pp. 3-5, ¶¶ 3-13). He alleges that various correctional officers failed to stop the assault, correctional officers carried him off of C-Block head first, and hit his head on the steel door frames. (*Id.*). Martin asserts that the correctional officers thereafter charged him with criminal assault as an attempt to shift blame. (*Id.*). He further alleges that correctional officers repeatedly opened his mail and "ma[y]be" copied it in violation of DC-ADM 803. (*Id.*).

The complaint asserts that Correct Care Solutions is an outside company that provides health care services to inmates and subcontracts work to other medical providers. (Doc. 1, p. 3, ¶ 14; Doc. 1, pp. 5-6). Martin alleges that CCS is responsible for the actions of the other Defendants, failed to investigate the alleged assault, and failed to take proper action to prevent deliberate indifference. (*Id.*).

In the motion to amend, Martin acknowledges that the "CCS acting doctor followed policy and procedure" when he ordered Martin to remain in the infirmary. (Doc. 101, p. 1). Martin contends that the DOC Defendants did not authorize his placement in the infirmary.

---

[1] The Court primarily includes the allegations relevant to Defendant CCS.

4

(*Id.*). He further asserts that CCS breached its duty "to provide decent, timely healthcare to prisoners." (*Id.* at p. 2).

## III. Discussion

Defendant seeks dismissal of all claims against CCS based on Martin's failure to plead a policy, practice or custom of CCS authorized by a final policymaker of CCS. (Doc. 114). Thus, CCS argues that it cannot legally be held liable without allegations which might bring it within *Monell*, and Martin has necessarily failed to establish a claim upon which relief can be granted. (*Id.*). The Court agrees and concludes that Martin does not allege sufficient facts to state a plausible § 1983 claim against CCS for deliberate indifference to Martin's serious medical needs in violation of the Eighth Amendment.

According to Martin, CCS is a private corporation that has been contracted to provide medical care to inmates at SCI-Smithfield. (Doc. 1). Under § 1983, a private corporation contracted by a prison to provide healthcare for inmates cannot be held liable for Eighth Amendment violations on a respondeat superior theory. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Rather, pursuant to *Monell*, a private corporation can be held liable for constitutional violations only if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); *Natale*, 318 F.3d at 584

(applying *Monell* to a private company providing medical services to inmates). *See also Weigher v. Prison Health Servs.*, 402 F. App'x 668, 669-70 (3d Cir. 2010) (nonprecedential) (noting that a private corporation providing medical service at a state correctional facility cannot be held liable under a theory of respondeat superior in a § 1983 suit). Thus, to prevail on his § 1983 claims against CCS, Martin must establish that there "there was a relevant [CCS] policy or custom, and that the policy caused the constitutional violation" for which he seeks relief. *See Natale*, 318 F.3d at 583-84. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)), *superseded in part by statute*, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1072, § 102. A course of conduct not expressly authorized by law becomes a "custom" when the challenged "practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Monell*, 436 U.S. at 690, 98 S.Ct. 2018. In order to establish CCS' § 1983 liability under either a policy or a custom argument, "it is incumbent upon [plaintiff] to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews*, 895 F.2d at 1480 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). The "policymaker" is the person who "has final, unreviewable discretion to make a decision or

take an action," and who is or is not a policymaker is determined by reference to state law. *Andrews*, 895 F.2d at 1481.

An act of an individual government employee may be deemed the result of a policy or custom of the government entity in the following three situations: (1) where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy"; (2) where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"; and, (3) where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584 (footnote, citations, and internal quotation marks omitted).

Martin fails to make reference to any final policymaker, by name, title or otherwise, that was aware of the alleged deliberate indifference to his medical needs and acquiesced to it. (*See* Docs. 1, 101, 137). Martin also fails to allege that CCS, as a private corporation maintaining and acting under color of state law, had a custom or policy that caused deliberate indifference to his medical needs. Instead, Martin broadly alleges that CCS "remains responsible for the action of [the other defendants] and failed to investigate and

take proper actions to prevent 'deliberate indifference'", (Doc. 1, p. 6), and "breached its duty to provide decent, timely healthcare to prisoners", (Doc. 101, p. 2). It is important to note that Martin has not established that there was a written policy that created an unreasonable risk of deprivation of medical care for serious conditions. Rather, Martin contends that the American Medical Association provides guidelines as to how to treat a head injury. (Doc. 101). Martin does not allege that CCS established a corporate policy, or had a corporate practice or custom with respect to treating inmates with injuries. Nor does he allege that any policy, custom, or practice of CCS caused the violation of his Eighth Amendment rights. See *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (stating that a private corporation providing medical care inside a prison may not be held liable for the "constitutional violations committed by its employees, unless [it] has adopted a policy, practice or custom that caused the constitutional violations alleged.") (citing *Monell*, 436 U.S. at 690; and *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 (7th Cir. 2004)). Moreover, Martin concedes that "CCS['] acting doctor followed policy and procedure as he order[ed] Plaintiff to remain in the institution infirmary." (Doc. 101, p. 1). He then asserts that the DOC Defendants, not CCS, prevented him from remaining in the infirmary. (*Id.* at pp. 1-2).

Despite being granted the opportunity to amend his claims against CCS, Martin fails to identify with specificity any municipal policy, practice, pattern, or custom of permitting

8

prison staff to engage in constitutional violations. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Moreover, there is nothing in the complaint or motion to amend that demonstrates that the purported policy was the "moving force behind the injury alleged." *Berg v. County of Allegheny*, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). Consequently, Martin cannot maintain a *Monell* claim against Defendant CCS, and this claim will be dismissed.

## IV.     Leave to Amend

When a complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). For the reasons set forth above, the Court concludes that granting Martin further leave to amend with respect to the claims against CCS would be futile.

V. **Conclusion**

Based on the foregoing, the motion (Doc. 111) to dismiss by Defendant Correct Care Solutions will be granted. A separate Order shall issue.

Dated: May 31, 2018

Robert D. Mariani
United States District Judge