IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TYRONE MARTIN, : Civil No. 3:16-cv-2060
:
Plaintiff : (Judge Mariani)
:
v. :
:
SECRETARY OF CORRECTIONS, et al., :
:
Defendants :

**MEMORANDUM**

Presently before the Court in this civil rights action are motions to compel discovery filed by Plaintiff Tyrone Martin ("Martin"), an inmate formerly housed at the State Correctional Institution at Smithfield, Pennsylvania ("SCI-Smithfield"). (Docs. 162, 164, 165). For the reasons set forth below, the motions will be granted in part and denied in part.

I. **Allegations of the Complaint**

Martin alleges that he was attacked by several correctional officers at SCI-Smithfield on May 5, 2015. (Doc. 1). He asserts that his cell door was electronically opened at approximately 2:18 p.m., and he approached Defendants Myers and Dickson to request a law library pass. (*Id.* at p. 6). Defendant Myers allegedly advised Martin to obtain the pass from the Sergeant. (*Id.*). Martin states that he then approached the Sergeant and requested a law library pass, who advised Martin to request the pass from Defendant Myers. (*Id.*). Martin returned to Defendant Myers, who was speaking with two other

inmates, and again requested a law library pass. (*Id.* at p. 7). Martin alleges that Defendant Myers began to yell at him, and Martin requested to speak to a Lieutenant. (*Id.*). Defendant Myers allegedly "became upset and enraged" when Martin asked for a Lieutenant. (*Id.*). Defendant Myers ordered Martin to go into a separate room, but Martin refused this order. (*Id.*). Martin alleges that several corrections officers then surrounded him and a fight ensued. (*Id.* at p. 8). He alleges that Defendants Myers, Dickson, Kanagy, Fazenbaker, Bickel, Barger, and Morrison assaulted him and used excessive force on him during the assault. (*Id.* at pp. 3-5, 8). Martin alleges that the officers punched and kicked him, stabbed him in the face, and verbally assaulted him. (*Id.* at pp. 3-5, 8, 9). He alleges that Defendant Gaff failed to stop the assault, correctional officers carried him off of the block head first, and hit his head on the steel door frames. (*Id.* at p. 9). As a result of the alleged assault, Martin states that he sustained multiple injuries to his face, head, leg, arm and body, as well as psychological trauma. (*Id.* at p. 9).

## II. Standard of Review

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosure or discovery of the materials sought. *See* FED. R. CIV. P. 37(a). The moving party must demonstrate the relevance of the information sought to a particular claim or defense. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope

2

of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 349 U.S. 495, 501 (1947). The procedural rule defining the scope and limits of discovery provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.2d 57, 65 (3d Cir. 2000). Furthermore, the court may limit discovery where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

FED. R. CIV. P. 26(b)(2)(c).

## III. <u>**Discussion**</u>

In the motions (Docs. 162, 164, 165) to compel, Martin seeks responses to his request for production of documents outlined in Document 143. The Court will address each request below.

<u>Requests 1, 3, 4, 6, 7, 11, 17, and 18</u>

(1) The JC Blair Hospital report for all Defendants taken to said hospital on 5-5-15

(3) The age, height, and weight of all male Defendants

(4) The names of all Defendants whom [sic] have been discipline[d] for violations of the code of ethics in the years 2014, 2015

(6) Copies of all videos from 5-5-15 incident

(7) The names of all inmate witnesses

(11) The security report with 18 U.S.C. 2510(5)(a) and DC-ADM 818 and what was recorded, monitored, divulged (which provides audio evidence)

(17) The security report and its packet sent to the OSII for review (fact finding) final judgment . . .

(18) The name of the inmate or inmates who [were] directed to clean up Plaintiff's blood (crime scene)[1]

The Court finds that these requests appear to be both relevant to Martin's claims and

---

[1] As to Request for Documents No. 18, the Court declined to grant Plaintiff's request for what appears to be an explanation as to why "no photographs were taken," since the Plaintiff's request may properly request documents only.

not unreasonably burdensome or violative of any privilege. As such, the Court will grant these requests and Order the Corrections Defendants to respond to Martin's request for production of documents, in accordance with Department of Corrections' policy.

### Request 16

(16) Any and all rules, regulations, policy and procedure dealing with "cell restriction," "call outs," and "refusing to obey an order." Along with the chain of command in dealing with problems

To the extent that such policies exist, the Corrections Defendants shall provide the requested information to Martin in accordance with Department of Corrections' policy. Thus, the Court will grant this request.

### Request 20

(20) The name, height, weight, age, and the military branch of each Defendant (served in) and any medical treatment (mental or physical) prior to 5-5-15 . . . along with any wars these Defendants may have took part in

This request will be denied. Martin's request for the name, height, weight, and age of all Defendants was previously sought in request number three. Therefore, this request will be denied as redundant.

The Court will deny Martin's request for Defendants' mental and physical medical treatment prior to March 5, 2015. The Court finds that the request for all medical documents regarding the Corrections Defendants is both overly broad and is presumably

protected health information under HIPAA.[2] Because the release of this sensitive medical information may violate the Corrections Defendants' rights under HIPAA, the Court will deny this request.

The Court will deny Martin's request for information regarding each Defendant's military service, if any.

### Requests 2 and 5

(2) The medical records for all Defendants taken to said hospital on 5-5-15

(5) The names of all Defendants placed under investigation for code of ethics violations in 2014 & 2015

The Court will deny Martin's request for the medical records of all Defendants taken to the hospital on May 5, 2015. This request is too broadly written and would likely include the production of privileged medical records, such as examinations, tests, medical procedures, notes, and clinical encounters. As such, this request will be denied.

Similarly, Martin's request for the names of all Defendants placed under investigation for ethical violations in 2014 and 2015 will be denied as vague and overly broad. "Although personnel files are discoverable, they contain confidential information and discovery of them should be limited." *Harris v. Harley-Davidson Motor Co. Operations, Inc.*, 2010 WL 4683776, *5 (M.D. Pa. 2010) (citing *Reagan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648

---

[2] The Health Insurance Portability and Accountability Act of 1996, at Pub.L. No. 104-191, 110 Stat. 1936 (1996).

(10th Cir. 2008) ("Personnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly. . . . This is not to say personnel files are categorically out-of-bounds."); *Miles v. Boeing Co.*, 154 F.R.D. 112, 115 (E.D. Pa.1994) ("[P]ersonnel files are confidential and discovery should be limited.")). Martin requests information from the Corrections Defendants' personnel records, however his request for the names of all Defendants placed under investigation for ethical violations over a two-year period is too vague, and would likely require the production of substantial amounts of information. Furthermore, Martin seeks disciplinary and personal information that may jeopardize the Corrections Defendants' safety. Beyond the obvious privacy concerns surrounding releasing personnel information about the Corrections Defendants, Martin's request is overly broad as he potentially seeks information that is not related to the claims in this action. Therefore, the Court will deny this request.

Requests 8, 9, 15 and 19

(8) The location of all surveillance cameras which are locate[d] on the side of the institution where the incident took place. C, B, A, D, activities building, [etc.] . . .

(9) The radius in which each camera covers a[] diagram to illustrate

(15) The line movement center control time sheet which shows the actual times control cleared the movement (shift change) on 5-5-15

(19) A diagram of the Block in which this incident took place

The Court finds that releasing specific information regarding camera locations, the number of cameras, camera angles, and capabilities, could compromise the security and safety of the institution for inmates, visitors, and staff. Furthermore, the release of information relating to shift changes could reveal confidential information related to prison security, such as the number of personnel on a cellblock at different times and when supervisors enter and leave the area. Therefore, these requests will be denied.

Requests 10, 12, 13, and 14

(10) The names of the inmates who were using the telephone system between 2:20 p.m. and 3 p.m.

(12) The 5-5-15 phone call sign up sheet

(13) The actual Tues. June 14, 2016 12:22 p.m. email and Tues. June 14, 2016 10:38 a.m. email sent from (Martin B. Hobbs) to (Lisa Hollibaugh) subject C Block camera; sent from (Gail Lewis) to (Martin B. Hobbs) subject C Block cameras which concerns "CCTV" checklist which all cameras pass

(14) The maintenance records for 5-4-15 and 5-5-15 (work list)

Martin has not explained how these requested inmate names and requested log book pages and emails have any bearing on his claims. It is conceivable that the phone log could reveal inmates who were in the area at the time of the alleged assault and have personal knowledge of the incident. This information may be relevant and may lead to the

discovery of admissible evidence. However, actual copies of the log books and emails could also reveal confidential information. Therefore, these requests will be granted insofar as the Corrections Defendants must provide the names of any inmates who used the telephone system between 2:20 p.m. and 3:00 p.m. on March 5, 2015.

## IV. Conclusion

Based on the foregoing, Martin's motions (Docs. 162, 164, 165) to compel will be granted in part and denied in part.

A separate Order shall issue.

Dated: January 23, 2019

Robert D. Mariani
United States District Judge